Terrell v. Rowland, &c.

CASE 10—PETITION EQUITY—JUNE 18.

# Terrell v. Rowland, &c.

| 86 | 67 |
| 96 | 452 |

| 86 | 67 |
| e118 | 920 |

| 86 | 67 |
| 137 | 388 |

APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

1. PERSONAL REPRESENTATIVES—VERIFICATION OF CLAIMS.—In a suit by the heir or distributee against the personal representative for a settlement and distribution of the assets in his hands, the personal representative is entitled to credit by claims against the estate which he has paid, although they were not verified and proved as required by the statute, provided it appears that the demands were just.

2. SURVIVING PARTNERS.—While a surviving partner cannot settle a claim against the firm, and bind the other partner or his individual estate, he may make a settlement by way of ascertaining what is owing to a creditor.

3. SAME—COMPENSATION.—The surviving partner who collects the debts, adjusts the accounts, and winds up the concern, is not entitled to compensation for trouble or services unless it is so stipulated, the same rule applying as if the partnership had continued. And while exceptions to this general rule may and do arise, there is no reason for departing from it in this case.

4. PLEADING—SURCHARGE OF SETTLEMENT.—One seeking to surcharge and falsify the settlement of a fiduciary with the county court, must, by pleading, specifically aver what items are incorrect, and state why they are so.

   The pleadings in this case aver as to each item of credit that it is not verified or proved, and is unjust, and that the settlement was fraudulent. No objection was made to the pleadings, and upon the issue as presented by them the parties went to trial. *Held*—That the court will, even if it be a matter of doubt, consider the question as fully made by the pleadings, whether appellant, the executor, was entitled to credit by the vouchers which the judgment appealed from rejected.

5. SETTLEMENT WITH EXECUTOR—PRESUMPTIONS.—As two of the children of the testator were of age when the county court settlement was made, and the credits for certain vouchers were of record and remained unchallenged by them or the widow until this suit was brought, a period of over thirteen years, it should be presumed that the credits were properly allowed; and even if they should not have been allowed at the time, yet, as it is shown that the estate has not been injured, the settlement should not now be disturbed.

6. SAME.—A judgment having been rendered against appellant as an individual as well as executor, it should be presumed, at least after a

Terrell v. Rowland, &c.

great lapse of time, that an affidavit as to the claim was made before the rendition of judgment, as required by the statute relating to claims against decedents.

7. APPELLATE PRACTICE—PARTIAL TRANSCRIPT.—Since the repeal of the law requiring errors to be assigned, the appellant in a chancery cause may bring up as much of the record as he deems necessary to the determination of the questions involved, but he does this at his peril, since if, upon the hearing, it appears that portions of either the pleadings or the evidence bearing upon the questions involved on the appeal have been omitted, the judgment below will be affirmed, as in an ordinary action when all of the evidence is not before the court.

BIGGER AND REID AND L. D. HUSBANDS FOR APPELLANT.

1. To surcharge and falsify the settlement of a fiduciary, there must be specific allegations as to the items objected to.
2. A claim against an estate, created after the death of the decedent, need not be verified, and the claimant is a competent witness to establish the claim. (Lucking's Administrator v. Gegg, 12 Bush, 299; Berry v. Graddy, 1 Met., 558.)
3. Surviving partner may adjust and settle all outstanding claims, but can make no new contract to bind the partnership. (Darling v. Marsh, 22 Maine, 188; Collyer on Partnership, 520; Hanser v. Irvine, 3 Watts & Sargent, 345; Tereier v. Sayres, 5 Watts & Sargent; Brown's Ex'r v. Higginbottom, 5 Leigh, 583; Ely v. Shreve, 5 Dana, 399.)

THOMAS E. MOSS FOR APPELLEE.

An amended pleading not allowed to be filed and not made a part of the record by bill of exceptions can not be considered by appellate court. (Young v. Barnett, 7 Bush, 476; Breeding v. Taylor, 13 B. M., 483; Raines v. Fauvall, 2 Bibb, 237; Vaughn v. Mills, 13 B. M., 634; Pollard v. Yoder, 2 Monroe, 265; Civil Code of Practice, 335.)

J. W. BLOOMFIELD ON SAME SIDE.

No brief in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Isaac Clark died testate in November, 1858, leaving his widow, Juliana Clark, and his five children, Fannie, who married the appellee, Reuben Rowland, Ora, Luella, Luther H. and Anna Clark, as his devisees.

The last-named died intestate and without heirs in 1860.

The testator at the time of his death owned a large estate, consisting of lands in Illinois, and in some two or three counties in this State, town lots in the city of Paducah, and considerable personalty, but embracing no money. His indebtedness at that time was also considerable. He appointed the appellant, T. F. Terrell, in whom he appears to have had great confidence, his executor, giving him by the terms of the will much discretionary power in the conduct of the estate.

Thus, he authorized him to sell the Illinois lands "at such time and on such terms as he may think proper for the interest of my estate;" sell certain portions of his estate in Kentucky when his youngest child should become of age, "at such time and on such terms as he may deem proper;" improve such of certain town lots as he might deem best ; rent out the property save that devised to the widow ; compromise any debts due the testator, if, in the opinion of the executor, the interest of the estate required it; provide for and superintend the support and education of his children, the will expressly providing, that by reason of this last provision no guardian should be appointed for them. In short, the executor was given the entire management of the estate, and the control of the greater portion of the property, with large discretionary powers, it providing, however, that the children were to come into possession of certain portions of it, which were not to be sold at the periods named in the will, while the executor was authorized to sell other portions of it at any time in his discretion, and

other portions at such time after the youngest child became of age as he might deem best.

The will also provided that the executor should not be required to settle his accounts in the county court as often as required by the general law, "but that he do so as soon after my death as practicable, say within three months, and at least once every five years thereafter;" and in speaking of his compensation, it says:

"It is my desire and wish that my executor shall receive a full, ample and liberal compensation for his services in the discharge of his duties in the management of my estate. It is not my wish to confine his compensation merely to what the law would allow him, as in many cases his services to my estate would be worth much more than the law allows."

The appellee, Terrell, at once assumed the execution of the responsible and arduous trust thus confided to him; returned an inventory of the estate to the proper court, but made no settlement until October 8, 1868, when he did so, and it was confirmed by the county court. It embraced a great many items of debit and credit, and a balance was found due the executor of three thousand and thirty-seven dollars and thirteen cents, leaving in his hands, however, unpaid notes belonging to the estate amounting to fourteen thousand four hundred dollars and fifty-nine cents. In this settlement the executor was allowed for his services three thousand four hundred and sixty-four dollars and fifty-four cents, being the five per cent. allowed by the statute upon the amount disbursed, and also five thousand dollars, or five hundred dollars *per* year, for the period from his qualification to the date of the

Terrell v. Rowland, &c.

settlement.   He was also allowed as credits what in that settlement is known as voucher No. 309, for six thousand six hundred and ninety-nine dollars and thirty cents, being an execution debt in favor of the Commercial Bank of Kentucky against the firm of Terrell, Clark & Co., and voucher No. 310, for one hundred and thirteen dollars, being the sheriff's half commission upon said debt, and both of which sums were paid by the appellant.

In 1871 the appellees, Rowland and wife, brought an action against the appellant to compel a settlement of the estate, but abandoned it, expressing regret that they had instituted it, and a belief that the management of the estate by the appellant was the best possible under the circumstances.

Thus matters continued until February 18, 1882, when Rowland and wife brought this action, seeking to review and surcharge the county court settlement of 1868, to compel a settlement of the estate by the appellant, and the division of any assets in his hands, and to procure a partition of the unsold lands.   The widow and other devisees were made defendants, and they, by cross-pleadings against the appellant, sought the same relief.   Upon the one side gross mismanagement and fraud is charged ; while upon the other this is denied *in toto*, and it is asserted that the estate has been so managed that but for it its indebtedness would have consumed it, leaving the widow and children paupers, whereas they now have an estate equal or exceeding in value all the property owned by the testator at his death, and free of debt.

After a careful reading of the entire and voluminous

record, we are satisfied that the charges of bad faith and fraud upon the part of the executor are unfounded.

The case was referred to a commissioner, before whom the appellant appeared with a full statement in writing of his receipts and expenditures, and its correctness is supported by his testimony. In addition to the compensation allowed him in the settlement of 1868, he claimed seven thousand and ninety-two dollars, of which three thousand and twenty-six dollars is for five per cent. upon the disbursements by him since 1868, and four thousand and sixty-six dollars is for extra services for that period, or at the rate of three hundred dollars a year. Among the credits claimed by the executor is one represented by voucher No. 119. A brief history is necessary to a correct understanding of it.

In 1856, the firm of Terrill, Clark & Co. was formed for the purpose of engaging in the rolling-mill business. It purchased at a heavy expense a rolling-mill in Paducah, Kentucky, and operated it for a short time. The firm was composed of the appellant, Terrell, who owned one-sixth interest; J. H. Terrell, who represented a like interest; D. Watts and D. A. Given, of the firm of Watts, Given & Co., owning one-third interest, and the testator, Isaac Clark, who had a like interest. The enterprise proved a disastrous one pecuniarily, and in the midst of it Clark died. At this time the business was in such condition that it could not be settled as between the partners. The war came on; the military took possession of and used the mill, and it was finally sold by the surviv-

ing partners at a heavy loss. While it was operated by the firm, their accounts were kept upon the books of the banking firm of Watts, Given & Co. All of the members of this firm were not members of the firm of Terrell, Clark & Co., and the latter became largely indebted to the former firm. Some of this indebtedness, according to the testimony of the appellant, Terrell, accrued before and some of it after the death of Clark; but it is not shown what portion was in existence before his death or what accrued after; and, indeed, the items of it are not shown at all. The appellant, Terrell, attended mainly to winding up the business of the firm; and he testifies that he, as one of the survivors and as the executor of Clark, together with the other surviving members of the firm, made a settlement with the survivors of Watts, Given & Co., after an examination of the books of the latter firm, in 1868, and it was then ascertained and agreed between them that Terrell, Clark & Co. were indebted to Watts, Given & Co. in the sum of thirty-four thousand five hundred and forty-nine dollars and seventy-seven cents, of which Clark's portion was one-third, or eleven thousand five hundred and fifteen dollars and fifty-nine cents. Watts, Given & Co., by written assignment, transferred eight thousand dollars of this last-named sum to one Britt, and when Terrell, as executor, paid it off, it amounted to eight thousand eight hundred and forty dollars. They also gave an order on him as executor of Clark to one J. H. Terrell for the balance; and when paid, it amounted to three thousand six hundred and sixty-three dollars and eleven cents.

The appellant presented to the commissioner an account of what he had paid out for Terrell, Clark & Co., not including, however, the sums paid to Britt and J. H. Terrell, credited by what he had received of firm assets, leaving a balance in his favor of two thousand seven hundred and ninety-five dollars and two cents, of which Isaac Clark's portion would be the one-sixth, or nine hundred and thirty-one dollars and sixty-seven cents. He also filed an account against his testator's estate in his favor, and as growing out of the firm matters of Terrell, Clark & Co., for the sums thus paid Britt and J. H. Terrell, and the nine hundred and thirty-one dollars and sixty-seven cents, crediting it by voucher No. 309, for six thousand six hundred and ninety-nine dollars and thirty cents, and No. 310, for one hundred and thirteen dollars of the county court settlement of 1868, leaving a balance due him of six thousand six hundred and twenty-two dollars and forty-eight cents, for which he claims credit with the estate of his testator, and this claim is known in this record as "voucher No. 119." The commissioner allowed the credits for vouchers Nos. 309 and 310 as given in the settlement of 1868 to stand; allowed to the appellant the balance of six thousand six hundred and twenty-two dollars and forty-eight cents as *per* voucher 119, and remitted the question of the executor's compensation to the court. It reduced the claim of seven thousand and ninety-two dollars for services to five thousand dollars; charged the executor with the amount of vouchers Nos. 309 and 310 of the county court settlement, and rejected voucher No. 119, thus

refusing to allow him the sums paid by him to the Commercial Bank, Britt and J. H. Terrell, and the nine hundred and thirty-one dollars and sixty-seven cents aforesaid. Of this he now complains; and this action of the lower court, as this record stands, is alone to be considered.

The charges against the executor that he improperly compromised the Boone & Larman debt; that he negligently failed to sell the rolling-mill at a fair price, and when he could have done so, or the Illinois land; and with the proceeds of the latter have improved the Paducah lots; and that he negligently failed to rent them out for a term of years, and have them improved in payment of the rent, are, in our opinion, unsustained by the record. In any event, we can not review them, as there is no cross-appeal.

It is urged that the judgment below must be affirmed because the entire record has not been brought up by the appellant. The appeal was granted by the lower court before the repeal of the law requiring the filing of an assignment of errors; and as it is a suit to settle the estate of a decedent, the appellant presented his assignment of errors to the trial judge, and he directed what parts of the record should be copied for the appeal. This, however, was done after the Legislature had, by the act of April 4, 1884, repealed the law requiring errors to be assigned.

Since its repeal, however, and now, an appellant in a chancery cause may bring up so much of a record as he deems necessary to the determination of a question involved. He does this at his peril, however, because if upon the hearing it appears that portions

of either the pleadings or the evidence bearing upon the question have been omitted, the judgment below will be affirmed as in an ordinary action when all of the evidence is not before this court. (Brockle v. Brockle, MS. Opinion, April 3, 1886.) This does not, however, appear in this case.

The record shows that this estate was so complicated, and the duties growing out of the trust so numerous, that much labor was not only necessarily imposed upon the executor, but was in point of fact performed by him. He was, however, allowed for services in the county court settlement eight thousand four hundred and sixty-four dollars and fifty-four cents. The judgment appealed from makes him a further allowance of five thousand dollars; and in addition to this, he is allowed a considerable sum as against the widow and three of the children for attending to business for them which did not fall within his duties as executor, but which it is probable he could attend to the more easily by reason of being such personal representative. It is evident that the lower court carefully examined the case, and the conclusion arrived at in this respect will not be disturbed.

It is contended that the pleadings of the appellees do not support an attack upon the settlement of 1868. *Prima facie* the law presumes it to be correct. One seeking to surcharge and falsify a county court settlement of this character must by pleading specifically aver what items are incorrect, and state why they are so. In fact, this rule applies to a settlement of any character. For instance, in the case of a settled ac-

count between partners, the complaining party must distinctly specify the fraud or errors in his bill. (Adams Equity, p. 452.) This rule of pleading has been applied in surcharging the settlements of fiduciaries, although persons under disability may be interested.

The averments of the pleadings in this case in this respect are quite general. Briefly stated, they aver as to each item of credit that it is not verified or proven, and is unjust, and that the settlement was fraudulent. No objection, however, was made to the pleadings; the issue as presented by them was formed, and upon it the parties went to trial. Moreover, the question of the appellant's right to a credit for the vouchers 309 and 310 was again presented in this suit by the appellant himself by his crediting the amount of them in voucher 119 as heretofore stated. We will, therefore, even if it be a matter of doubt, consider the question as fully made by pleading, whether the appellant was entitled to credit by the vouchers which the judgment now in question rejected.

It should be borne in mind that when the county court settlement was made in 1868, two of the children of the testator were of age, and the credits for vouchers Nos. 309 and 310 were of record, and remained unchallenged by them or the widow until this suit was brought, a period of over thirteen years. Under such circumstances, it should be presumed that the credit is correct; and even if it appear that it should not at the time have been allowed, yet if it is shown that the estate has not been injured, it should not now be disturbed. The judgment in favor of the

Commercial Bank against Terrell, Clark & Co. was
against the appellant both individually and as exec-
utor of Clark. This being so, it should be presumed,
at least after this lapse of time, that an affidavit as to
the claim was made before the rendition of the judg-
ment, as required by the statute relating to claims
against decedents. If there were assets of the firm
of Terrell, Clark & Co. sufficient to pay it, or the debt
owing to Watts, Given & Co., then these claims should
have been paid out of them, and no part of them
charged to Clark's estate. It is manifest, however,
that this was not so, and that the firm as such was
insolvent.

The judgment being against the appellant individ-
ually, the creditor had the right to compel him to pay
it all. If this had been done, then as Clark's estate
owed one-third of it, certainly any court would, in
settling with Terrell as executor, have permitted him
to retain what he had paid as such third, and which
had thus become his claim against the estate, provided
it was made to appear that it was just as against Clark,
although the original creditor had never made the stat-
utory affidavit to the claim.

It appears that the appellant, as executor, paid the
entire claim, because he knew that the estate of his
testator had not paid its proportion of the indebted-
ness of the firm. Conceding, however, that Clark's
estate should only have been charged with one-third of
it, and that the appellant should have been credited
by only this much in the settlement of 1868, yet if the
claim of the appellant represented by voucher No. 119
is correct, then as Clark's estate is therein credited by

the full amount of vouchers 309 and 310, it results that the credit given for them in the county court settlement should stand, because the estate has not been injured.

It is contended that the appellant is not entitled to credit for the sums paid by him to Britt and J. H. Terrell in discharge of Clark's portion of the indebtedness of Terrell, Clark & Co. to Watts, Given & Co. first, because it is not shown that any such indebtedness existed, and no itemized account of it is presented; and second, because the statutory affidavit as to the claim was never made by Watts, Given & Co., nor was the claim proven.

Sections 35 and 39 of article 2, chapter 39, of the General Statutes, provide: "All demands against the estate of a decedent shall be verified by the written affidavit of the claimant, or in his absence from the State by his agent, or if dead by his personal representative, stating that the demand is just, and has never to his knowledge or belief been paid, and that there is no offset or discount against the same, or any usury therein.   *   *

"No demand against a decedent's estate shall be paid by his personal representative or allowed as a credit by any commissioner or court, which is not verified by affidavit as required herein."

Manifestly this statute was intended to furnish to the personal representative something to guide him in the settlement of claims against the decedent, and as to which he would, in the great majority of cases, have no knowledge. This being the reason for its existence, it should not be held to be an inexorable rule in

courts of equity, when suits are brought by the heir or devisee against the personal representative for a settlement and distribution of the assets in his hands after the payment of the debts. The spirit of the statute should be looked to for a construction and as a guide in its application.

A personal representative may not know whether a claim is just or contains usury, or whether there is any set-off or discount against it; and, *therefore*, the law requires it to be verified and proven. Suppose, however, A presents a claim to B, the administrator of C, and demands its payment. B says "you must prove it." A replies, "you know all about it; I will prove it by you." B thereupon pays it without proof of it, since he does know all about it. Can it be said that a court of equity in a controversy between him and the heir or devisee can not give him credit by it when it is shown to the court that it was a just claim? We think not. If so, then justice is defeated instead of promoted.

It is clear that the claims of the Commercial Bank and of Watts, Given & Co., had a real existence, and that they were just demands. When this is shown in a contest between the personal representative and the distributee is the latter to be allowed to gainsay their payment in a court of equity under the letter of a statute which was enacted to compel a showing of their justness in order that they might be paid?

When the claims were held by the bank and by Watts, Given & Co., the appellant was *himself* a competent witness to prove them, and could have been required to do so by the claimants. His deposition in

this case, subjected as he was to a cross-examination, is more satisfactory than an *ex parte* affidavit would have been.   It operates *nunc pro tunc ;* and authorizes the chancellor to allow the claims.

The appellant testifies that the accounts of Terrell, Clark & Co., upon the books of Watts, Given & Co., were open at all times to the inspection of the members of the firm; that he was at the time familiar with them and knows they were correct; that the surviving members of the two firms got together in 1868 and made a settlement; and while he cannot now give the items, he knows a balance of thirty-four thousand five hundred and forty-nine dollars and seventy-seven cents was found due to Watts, Given & Co., and that it was correct.   There is no one else left now to testify as to it.   The appellee, Juliana Clark, testifying in March, 1883, says that the other members of the two firms are dead.   As an evidence of the good faith in the matter, the appellant as an individual and member of the firm of Terrell, Clark & Co., paid his one-sixth of the indebtedness thus found due, and indeed it appears that all the members of the firm have paid their proper share of it.

The appellant was a party to the settlement both as a surviving partner and as the executor of Clark.

It is true that the law in this State, as laid down in numerous decisions of this court, does not permit one partner, after the dissolution of the firm, or a surviving partner, to settle a claim against the firm, and bind the other partner or his individual estate.   (Montague v. Reakert, 6 Bush, 393; Merritt v. Pollys, 16 B. M., 355 ; Bacon, McClardy & Co. v. Hutchings, Duncan & Co., 5 Bush, 597.)

A surviving partner may, however, make a settlement by way of ascertaining what is owing to a creditor. In this case, however, the executor was individually liable for the entire debt due to Watts, Given & Co. They could have compelled him to pay all of it. If he had done so, will it be contended that he could not have retained enough of the funds of the estate in his hands as executor to reimburse himself as to the portion which was in fact owing by his testator? When he paid the portion of his testator, as he unquestionably did, it became a debt in his favor against the estate of his testator; and as he now shows it to be a just claim, it should have been allowed.

The above views are in harmony with those expressed in the cases of Overly's Executor v. Overly's Devisees, 1 Met., 117; Lucking's Administrator v. Gregg, 12 Bush, 298; Berry, &c., v. Graddy, 1 Met., 553, and Hoyt v. Sprague, 8 Reporter, p. 616; and seems to us to accord with the equitable rule laid down in Perry on Trusts, section 485: "That the *cestui que trust* ought to save the trustee harmless when the trustee has honestly, fairly, and without the possibility of gain to himself, paid out money for the *cestui que trust*."

The account presented by the appellant, which shows a balance owing to him from Terrell, Clark & Co., of two thousand seven hundred and ninety-two dollars and five cents, and with one-third of which, or nine hundred and thirty-one dollars and sixty-seven cents, he charges the estate of his testator, contains an item of credit in his favor of five thousand dollars for winding up the business of the firm. It is true it appears that he mainly attended to it, but the business of the firm

was not carried on after Clark's death, and the appellant was the executor of Clark, and in the absence of any agreement authorizing it, it is the general rule that a surviving partner is not entitled to compensation for such services.

It is said in 3 Kent, p. 64, note $b$: "The surviving partner or partners who collect the debts, adjust accounts, and wind up the concern, have no compensation for trouble or services, unless the same be stipulated. The same rule applies as if the original partnership had continued." The same rule is laid down in Collyer on Partnership, Perkins' ed., sections 199$n$ and 328; and especially if the survivor be the executor of the deceased partner.

Exceptions to this general rule may and do, under modern decisions, arise; but we see no reason for departing from it in this instance. The item for pay for these services should be disallowed; and it results that instead of there being a balance in appellant's favor on this account presented by him of two thousand seven hundred and ninety-two dollars and five cents, that he is indebted to the firm in the sum of two thousand two hundred and seven dollars and ninety-five cents, and that Clark's estate should be credited with one-third of it, or seven hundred and thirty-five dollars and ninety-eight cents, as against the appellant.

The item of credit in his favor in voucher No. 119 of nine hundred and thirty-one dollars and sixty-seven cents, should, therefore, be expunged, and instead thereof the estate should be credited by seven hundred and thirty-five dollars and ninety-eight cents; but, subject to this correction, this voucher should be allowed.

It is manifest that the executor paid the debts to the bank, Britt and J. H. Terrell; this was done for the benefit of the estate; and it is now shown that they were just, and in this contest between the executor, who has acted in good faith, and the devisee, it would be inequitable not to allow him credit for them.

Judgment reversed, and cause remanded for a judgment and further proceedings in conformity to this opinion.