## Breckinridge County v. Gannaway et al.

(Decided March 4, 1932.)

50

JAMES & JAMES and ROBERT TRENT for appellant.

P. M. BASHAM for appellees.

C. C. TURNER, amicus curiae.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Reversing.

This is a suit brought by Breckinridge county to
recover from its sheriff, W. G. Gannaway, and his surety,
$10,500, representing taxes collected by him and due the
county for the year 1930, and the further sum of $2,068.05
as a penalty on the amount of $34,267.58 of county taxes
collected by him for the year 1930 and which he had not
turned over to the county by January 20, 1931. The
undisputed facts are these: Gannaway, the sheriff, col-
lected the 1930 taxes due the county and deposited the
same to his credit as sheriff in two banks at Hardinsburg.
At the April, 1930, term, the fiscal court of Breckinridge
county elected a county treasurer who, in due time, quali-
fied and was throughout this litigation holding such office.
On January 20, 1931, the sheriff had in his hands taxes
that had been collected by him before that date and not
turned over to the county amounting to more than
$34,267.58. He still had this sum on hand on the 29th
day of January, 1931, on which day he made a settlement
with the fiscal court. In accordance with that settlement,
he delivered to the clerk of the fiscal court checks payable
to Breckinridge county aggregating the $34,267.58. One
of these checks was for $10,500, and was drawn on the
Bank of Hardinsburg & Trust Company, which, up to
and including January 29, 1931, was considered solvent
by the sheriff and the public generally. However, to the
surprise of the public, after the close of business that
day, it was placed in the hands of the state banking com-
missioner for liquidation as insolvent; did not open for
business on the next day, and has since that time been
in liquidation as an insolvent bank. The check which the
sheriff had drawn upon it and given to the clerk of the
fiscal court reached the hands of the county treasurer
after January 29, 1931. Of course, due to the closing of
the bank, it could not be collected. The questions involved
in this litigation are whether or not the county is entitled
to a judgment against the sheriff and his surety for the
$10,500, with interest from January 29, 1931, and whether
or not it is entitled to the 6 per cent penalty provided
for by section 4147 of the Kentucky Statutes on the
$34,267.58 which the sheriff had in his possession on
January 20, 1931. The trial court submitted both of
these questions to the jury, the first on the theory that
the sheriff was not absolutely liable for the funds in

question, but that, if he acted in good faith and without negligence, and in the exercise of ordinary care in depositing and keeping the money in the Bank of Hardinsburg & Trust Company, he was not liable for the $10,500; otherwise he was. As to the second question, the court by instruction No. 2 told the jury that, if the sheriff had on hand any funds on January 20, 1931, which he did not pay to the county treasurer until after that date, they should find for the county 6 per cent of such amount on hand. Although under the admitted facts of this case this was practically a peremptory instruction on this phase of the case to find for the county, the jury found both items for the sheriff and his surety, and, from the judgment entered on that verdict, this appeal is prosecuted.

Certain preliminary matters must be disposed of before we reach the real issue in this case. The appellees insist that they were entitled to a peremptory instruction as to the $10,500 item because the giving of the check by the sheriff to the fiscal court operated as an assignment of the funds then in the bank to meet it, and the fiscal court accepting such check became the owner of such funds, and hence the sheriff was discharged from further liability for them. Whatever may have been the law in this connection prior to the passage of the Negotiable Instrument Act (Ky. Stats., sec. 3720b-1 et seq.), it is now settled in this state that, unless the giving and receipt of the check are specifically understood to be for and as payment and discharge in and of itself of the account, the mere giving of a check does not operate as payment and discharge of the debt until the check is paid or accepted by the bank at which it is payable. Cogar Grain & Coal Co. v. McGee, 241 Ky. 485, 44 S. W. (2d) 551. In the instant case, it is not shown that the receipt of the sheriff's check for $10,500 by the fiscal court was intended to operate in and of itself as a discharge of the sheriff's obligation or in any other way than the receipt of a check ordinarily operates in the usual and customary course of business. It follows that the sheriff's obligation was not discharged by the mere giving of this check to the fiscal court and its receipt by that body.

Appellees contend next in support of their position that they were entitled to a peremptory instruction that the holder of a check is bound to use due diligence in presenting it for payment, and that, in this case, the check

should have been presented the same day that it was issued, failing which the risk of its nonpayment shifted to the payee. It is true that a check must be presented for payment with due diligence, but it is settled that, where the maker, payee, and bank are residents of the same town the payee of the check has until the next secular day to present it and demand payment. Cawein v. Browinski, 6 Bush 457, 99 Am. Dec. 684. See also, 5 R. C. L. 509.

Appellees next argue that the petition was defective in that it did not allege facts showing the legality of the tax and the right of the sheriff to collect it. However, their answer in substance admits the legality of the tax and the right of the sheriff to collect it, and, if there was any defect in the petition, it was cured by the answer.

We now come to the heart of this controversy. It will be remembered that the court, in submitting this case to the jury, in effect told them that the sheriff was not liable for the bank's failure to pay this check because of its insolvency if the sheriff exercised ordinary care in the selection and retention of this bank as a place of deposit for the tax funds. Appellant insists that in this the court was in error, because, first, the sheriff is liable absolutely and at all hazards for the actual payment of the taxes collected by him, and it is not a question as to whether or not he acted in good faith and without negligence, but, if in error as to this, then, secondly, inasmuch as the sheriff continued to hold these taxes after January 20, 1930, he became, by virtue of the provisions of section 4147, thereafter an insurer of the safety of the funds. The first contention of the appellant and the theory under which the court submitted this case to the jury present the divergent ideas of the cases as to the liability of a public officer and his surety for the loss of funds collected by him due to the insolvency of a bank in which they are deposited, where the public officer has acted in good faith and without negligence in the selection and retention of such bank as a place of deposit of such funds. In 26 R. C. L. 373 may be found a statement of the conflict of authority on this question. Perhaps the numerical weight of authority from other jurisdictions supports the position of the appellant rather than that of the appellees which is represented in the instruction the trial court gave to the jury. In this state, we find the cases of Commonwealth v. Godshaw, 92 Ky. 435, 17

S. W. 737, 13 Ky. Law Rep. 572; Stephens v. City of Ludlow, 159 Ky. 729, 169 S. W. 473; and Johnson v. Fleming, 116 Ky. 680, 50 S. W. 855, 21 Ky. Law Rep. 4. The first two cases support the theory of the appellant as to absolute liability. The last case, intermediate as to time of decision between the first two, supports the appellees' theory as to the liability only for negligence. To these cases there should perhaps be added the cases of Sweeney v. Commonwealth, 118 Ky. 912, 82 S. W. 639, 26 Ky. Law Rep. 877, and Denny, Banking Commissioner, v. Thompson, 236 Ky. 714, 33 S. W. (2d) 670, for the discussion of the principle as to the relationship between a public officer and the public funds in his possession. We shall not attempt to reconcile these cases, nor is it necessary in the instant case to choose between the two conflicting principles. If that of absolute liability be chosen, the sheriff was and is liable in this case to the county for the unpaid check. If the principle of liability for negligence only be chosen, he will in this case be equally liable for the unpaid check because of the retention in the bank by him after January 20, 1931, of the tax funds of the county which he had collected and not turned over to the county.

This brings us to the second contention of the appellant. Section 4147 of the Statutes, so far as pertinent, reads:

"The sheriff or collector of the state and county revenue of each county of this Commonwealth shall, on the first day of each month in each year, report under oath to the county court of his county the amount of state and county taxes he has collected, together with all fines, forfeitures or money, or any other account that shall have been received or collected by him, showing in said report the amount collected for and belonging to each particular fund, for which such revenue or money may be intended, and the disposition of such revenue or money collected by him. *The sheriff or collector shall be required by the fiscal court to pay a penalty of six per centum (6%) on all taxes collected and unpaid by him to the county treasurer by the 20th day of January in each year.*" The italicized portion of the quoted statute was inserted therein by the amendment of 1928. See chapter 129, Acts of 1928.

In this connection, we must also read section 932 of the Statutes. It is:

"It shall be the duty of the sheriff or other collecting officer of the county to pay to the county treasurer, on the first day of May, and every sixty days thereafter, all money in his hands collected by him for the county, taking a receipt therefor from the county treasurer for the amount so paid, in duplicate, one copy to be retained by the sheriff and the other to be delivered by him to the county judge, who shall file the same in his office; and on final settlement had by the sheriff or any other collecting officer of the county, as required by the provisions of article eight of an act, entitled 'An act relating to revenue and taxation', which became a law November eleventh, one thousand eight hundred and ninety-two, he shall pay all money in his hands, if any remaining after said settlement, to the county treasurer, taking receipts therefor as aforesaid."

In Jefferson County v. Gray, 198 Ky. 600, 249 S. W. 771, this section was construed to mean that the sheriff must turn over to the county all moneys in his hands collected for it on May 1, and every sixty days thereafter, or on June 30, August 29, October 28, and so on, but this did not preclude the county from calling upon the sheriff for more frequent payments if it so desired and as it had a right to do under section 1884 of the Statutes. Thus we see that, although under section 932 of the Statutes the sheriff must pay over to the county treasurer the moneys he has collected for it as therein prescribed, he may also be called upon at other times to pay over such funds. By the amendment of 1928 to section 4147 of the Statutes, the Legislature has required the sheriffs, in addition to the duty imposed upon them by section 932 of the Statutes, where there is, as here, a county treasurer, to pay over by January 20, of each year, all taxes which he has collected for the county and not paid over to it. This is a payment in addition to those prescribed by section 932 and one competent for the Legislature to impose without affecting the duties imposed by section 932 as the Gray case, supra, holds may be done. It was as much the duty of the sheriff in this case to make the payment called for by section 4147 of the Statutes as those called for by section 932.

The sheriff in the instant case did not pay over to the the county treasurer by January 20, 1931, at least $34,265.58 of taxes which he had theretofore collected for it. Indeed, he did not undertake to turn any of this sum over to the county until January 29, 1931. He undertakes to excuse his delinquency in this respect by saying that the county judge told him he need not bother about making any payment until the fiscal court met on the 29th, when it would make a settlement with him. However, the failure of the fiscal court to meet before that date, or to settle with him before that time, did not prevent or excuse him from paying to the county treasurer by January 20, 1931, the taxes of the county he had theretofore collected and not paid over any more so than such failure on the part of the fiscal court would have excused the payments called for by section 932 of the Statutes. It was the mandatory duty of the sheriff under the statute to pay these taxes over by January 20, 1931. If he has not by then settled with the fiscal court, he can, of course, in a later settlement made with that body, take credit for the payment so made. He at least held these taxes for the county, and there is no reason why he should not pay them over any more than why he should not make the payments called for by section 932 of the Statutes where there is, as here, a county treasurer. It is just a payment in addition to those called for by that section. The statement of the county judge in the instant case did not serve to excuse the sheriff. In the case of Stanley v. Fiscal Court, Hopkins County, 190 Ky. 495, 227 S. W. 813, 814, where the county treasurer sought to excuse his delinquency in filing the reports called for by section 931 of the Statutes, on the ground that the county judge had told him it was not necessary for him to do so and it had never been the custom of the county treasurers before him to file such reports, in disallowing such defense we said:

"Appellant admits that he knew of the statute, but failed to comply with it because the county judge stated it was not necessary, and because it had been the custom not to comply with it. It was peculiarly the province of the Legislature to prescribe the duties of the treasurer. To this end it not only provided that the treasurer should make the reports to the county judge as set forth in the statute, but further provided that a failure to comply with that

duty was a misdemeanor, for which a fine not exceeding $100 could be imposed on the delinquent treasurer. Of course, this statute is mandatory in its terms, and cannot be set aside either by custom or by the direction of the county judge. The offense is complete if the treasurer merely fails to file the reports within the required time, and it is no defense that he acted in good faith and without any willful intention to violate the law.''

It follows, then, that the sheriff was obliged by January 20, 1931, to turn over this $34,267.58. What are the consequences if he failed to do so, even if it be conceded that prior to this time he was but a bailee of this sum and liable if lost due to the insolvency of the bank in which it was deposited only if he had been negligent in the selection and retention of such bank as such place of deposit? It will be noted that the sheriff did not retain this $34,267.58 in his own possession. He deposited it in the Bank of Hardinsburg & Trust Company and kept it there. In substance, instead of turning this money over to the county treasurer as he should have done, he turned it over to the bank as a deposit. Thus we have presented not a case of a bailee's duty to preserve the deposit, but rather its power of disposal. In the case of Harlan State Bank v. Banner Fork Coal Corp., 202 Ky. 639, 261 S. W. 16, speaking to this point, we said:

''The bailee's duty to preserve the deposit for redelivery to the bailor is not absolute, and demands of him only due care and good faith, but he has no power to dispose of it except to the bailor or in accordance with his directions, and his duty to return the property to its owner is absolute and not dependent upon diligence or good faith, when considered separate and apart from the duty to keep for return as is the case here. 3 R. C. L. 104; 6 C. J. 1143.

''While the bailee does not insure that he will safely keep and return the deposit, he does bind himself absolutely that he will not voluntarily dispose of it except to the bailor or in accordance with his directions. So if appellant, in attempting a redelivery to appellee, failed, no matter for what reason, to do so in the manner agreed upon it assumed all risk resultant therefrom, because such risk was neither contemplated nor authorized by appellee.''

So, in the instant case, conceding arguendo that the sheriff was a bailee of these collected taxes, we find that, instead of turning them over to the county treasurer as the statute required him to do, the sheriff left them in the custody of the bank. He thereby failed to dispose of them as the statute required him to do and in the manner as therein set out, that is, by turning them over to the county treasurer; but instead left them with the bank. He thereby assumed all the risk resultant from such departure from his duty as imposed by the statute. It follows that he and his surety are absolutely liable under the facts of this case, even though the appellees' theory of the sheriff's ordinary liability for public funds in his hands be adopted. Hence the court erred in not sustaining the appellant's motion for a peremptory instruction to find for it as against the appellees on the $10,500 item.

What we have said about the sheriff's mandatory duty to turn over to the county treasurer by January 20, 1931, the taxes theretofore collected by him and not paid over to that officer disposes of the second question involved on this appeal. The statute prescribes that he shall make such payment by such time, and further prescribes that, if he fails to do so, the 6 per cent penalty shall be imposed. It is true section 4147 of the Statutes was involved in the case of Pence's Admr. v. Nelson County, 107 Ky. 66, 53 S. W. 25, 21 Ky. Law Rep. 724, but the statute as it then read provided for the 6 per cent penalty only if the funds collected had not been paid over "on proper demand". These words do not appear in the statute as it was during the period covered by this litigation. The case of Clarke v. Commonwealth, 233 Ky. 728, 26 S. W. (2d) 1041, does not involve this penalty, as the taxes there collected were school taxes and there was no provision in the law as it stood during the time covered by such tax collections for a penalty like the one here involved, except for state taxes. That case simply turned on the common-law right to interest. It is thus apparent that neither of these cases militates against our present conclusion in this case. The lower court correctly instructed the jury on this issue, but it ignored such instruction and found for the appellees in defiance of that instruction and the facts. The court should have peremptorily instructed the jury to find for the appellant on this issue also.

The judgment is therefore reversed, with instructions to grant the appellant a new trial in conformity with this opinion.

Whole court sitting.