## Jordon, County Atty., v. Baker, County Judge, et al.

(Decided Dec. 15, 1933.)

H. H. OWENS for appellant.

TUGGLE & TUGGLE and ROBSION, SAMPSON & MANNING for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The office of sheriff of Knox county, for some cause not disclosed by the record, became vacant, and the appellee and plaintiff below, S. T. Jackson, was appointed and qualified to fill the vacancy. The vacancy, and Jackson's appointment to fill it, both occurred at a time requiring an election to fill the remaining portion of the term at the regular election held in November, 1933, if that election had not been one for the election of an incumbent of the office for the succeeding full term. Under such circumstances, the appointee (Jackson in this case) occupies the office to the end of the vacated term with all the incidents and rights thereto possessed by the one who was elected for that full term. See Constitution, sec. 152, and section 1522 of the 1930 edition of Carroll's Kentucky Statutes.

At the beginning of the year 1933, and within the time prescribed for that purpose, Jackson executed all of the official and revenue collecting bonds required of him by all statutes, which were duly approved and put to record, thus qualifying himself to perform the duties of the office, as well as those of collector of both the state and county revenue. During the month of February, 1933, he collected taxes for the county slightly in excess of $14,000, and for the county board of education about $2,100, which he deposited in separate accounts in his official capacity in the First National Bank of Barbour-

ville, Ky., which was then, and had been for a long period of time, an operating national banking institution. After making such deposits, but before he was required by the law to make settlement with and pay over to the proper authorities the funds in his hands, that bank closed its doors in compliance with a proclamation of the Governor of this commonwealth, which was shortly followed by a similar one by the President of the United States, and it was then placed in charge of a conservator, with authority to advance only limited payments on checks issued by its depositors. It has continuously remained in that situation following those proclamations; but there is nothing in the record showing that it is insolvent, or that its assets when eventually liquidated will be insufficient to meet its obligations, and especially those of its depositors.

Jackson could not obtain from the proper sources his quietus provided for in section 4130 of Baldwin's 1933 Supplement to the Kentucky Statutes without first paying to the authorities whose duty it is to issue them the amount of taxes in his hands as found by settlement made by him. The fiscal court of Knox county and its board of education so construed section 4130 of our present Statutes, and declined to accept his predicament as an excuse for his failure to do so or to issue to him his quietus, although he did draw and deliver to the proper authorities his checks for the correct amounts upon the bank in which he had deposited his collections; but they were marked "restricted," and he, being unable to pay the amounts from other sources, failed to receive his quietus. The same section provides in part that: "No tax-book shall be delivered to the sheriff or collector after the first year of his term who shall fail to exhibit such quietus on or before that [June 1 of each year] date." As a consequence, the fiscal court of Knox county declined to direct its county court clerk to deliver to Jackson the tax books for the incoming fiscal year, and the clerk declined to do so voluntarily; whereupon this action was filed by him in the Knox circuit court against the fiscal court, its members and the county court clerk seeking a mandatory injunction against defendants requiring and directing them to make such delivery to him so that he might proceed to collect the taxes due the state, the county, and the county board of education.

In his petition he averred the facts hereinbefore stated, with the additional one that in making the deposit in the bank referred to he did so in good faith and in the exercise of the requisite care, prudence, and caution that would govern ordinarily prudent business men under the same or similar circumstances. He also alleged the fact of the solvency of the bank and its general good financial reputation in the community at the time of the deposits and since, and averred that such facts exonerated him from liability to account for the deposits, and also excused him from paying the amounts as a condition precedent to his right to obtain his quietus. Following pleadings and motions made the issues and the court, upon evidence heard and upon a stipulation of facts, sustained his excuse and issued the mandatory injunction that he sought by the prayer of his petition. That judgment was rendered on November 22 of this year, and an appeal was granted to defendants by the trial court to this one; but during the same term, and before the appeal to this court was perfected and taken, the fiscal court met three days thereafter, and passed a resolution that it would not prosecute the appeal, but that it would comply with the judgment, which it did, and pursuant thereto the tax books were delivered to plaintiff. Following that resolution, the appellant, Victor A. Jordon, as county attorney for the county of Knox, filed his intervening pleading in the cause, in which he manifested the action taken by the fiscal court, and the action of the defendant, county court clerk, in compliance therewith (which he claimed was illegal and void and to the detriment of the interest of the county and its board of education), and he moved a reconsideration of the judgment granting the injunction, and that he be made a party to the cause. His motion was sustained, and he was made a defendant in the action, but his motion to set aside the original judgment was overruled, and from which order and from the original judgment he prosecutes this appeal.

The first question to be determined is his right to be made a party to the cause or to prosecute the appeal, since defendants have moved that the appeal be dismissed for want of his authority to prosecute it. But it is our opinion that the motion should be, and it is, overruled, and which conclusion is reached from a liberal interpretation of section 127 of our Statutes defining

in part the duties, powers, and authority of a county attorney. He is in a sense a representative of the people of his county, and should have the authority to take such legal action, even in his official name, as is necessary to protect the interest of the county and its people, and especially so when the fiscal court, which is charged with the primary duty to do so, refuses to take action or insists in taking a contrary one. The question for determination is a public one, and its correct solution is, at least, a debatable one, and the action of the fiscal court in passing the resolution referred to, after the rendition of the judgment herein, was in direct conflict with its former position, and which the county attorney in good faith conceived to be contrary to law. It would have been a useless and futile requirement for the county attorney under such circumstances to first insist upon the fiscal court taking the appeal contrary to its resolution, and, under the record as it then stood, he could not prosecute the appeal in his official capacity, since he had never been made a party to the action; but, after becoming such, upon proper application, it is our conclusion that he became vested with authority to bring the case here under his official designation as appellant; and which brings us to the merits of the case, and they in turn are determinable by the correct answer to the question: What are the duties of a tax collecting officer with reference to caring for and preserving the public funds that he collects, from the time he does so until the time he is required by law to make settlement and payment to the proper authority of the amount found due?

The question is further narrowed under the facts of this case to the one of, whether or not the sheriff, as collector of taxes, pursuant to duties imposed upon him by law, insures and guarantees the solvency of a bank with which he intrusts the custody of the funds he collects, so as to make him and his surety responsible if the bank should fail between the time of making the deposit therein by him and the date upon which he is required by law to make payment to the governmental authority entitled thereto, notwithstanding the bank was solvent when the deposit was made and the officer was guilty of no negligence? The latter question eliminates the question of the collector's liability for the loss

of the fund while in his possession before depositing it, and when under his immediate personal control.

Before attempting an answer, it should also be stated that, at the time the sheriff in this case deposited the funds in the First National Bank of Barbourville, it had been designated by the fiscal court as a depository of the county's funds and in which the collector thereof was authorized and directed to deposit them, and, under the broad authority conferred upon fiscal courts by section 1840 of our present Statutes, we conclude that the fiscal court possessed the right and authority to make the designation, and our determination of the concrete question involved will be made in the light of all the facts that we have related as they affect the general proposition as to what is the correct measurement of the liability of a collector of taxes and other public funds if for any cause they should become lost and unavailable for payment to the proper governmental authority when payment is due.

There is a marked divergency of opinion among the various courts of the country as well as the views of text-writers as to the correct answer, and such divergence is sometimes found to exist in the opinions of the same court, and which is true with respect to our opinions heretofore written by us. The true situation is depicted in our recent opinion rendered in the case of Breckinridge County v. Gannaway, 243 Ky. 49, 47 S. W. (2d) 934, 935, the language of which we insert: "We now come to the heart of this controversy. It will be remembered that the court, in submitting this case to the jury, in effect told them that the sheriff was not liable for the bank's failure to pay this check because of its insolvency if the sheriff exercised ordinary care in the selection and retention of this bank as a place of deposit for the tax funds. Appellant insists that in this the court was in error, because, first, the sheriff is liable absolutely and at all hazards for the actual payment of the taxes collected by him, and it is not a question as to whether or not he acted in good faith and without negligence, but, if in error as to this, then, secondly, inasmuch as the sheriff continued to hold these taxes after January 20, 1930, he became, by virtue of the provisions of section 4147, thereafter an insurer of the safety of the funds. The first contention of the appellant and the theory under which the court submitted this case

to the jury present the divergent ideas of the cases as to the liability of a public officer and his surety for the loss of funds collected by him due to the insolvency of a bank in which they are deposited, where the public officer has acted in good faith and without negligence in the selection and retention of such bank as a place of deposit of such funds. In 26 R. C. L. 373 may be found a statement of the conflict of authority on this question. Perhaps the numerical weight of authority from other jurisdictions supports the position of the appellant rather than that of the appellees which is represented in the instruction the trial court gave to the jury. In this state, we find the cases of Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737, 13 Ky. Law Rep. 572; Stephens v. City of Ludlow, 159 Ky. 729, 169 S. W. 473; and Johnson v. Fleming 116 Ky. 680, 50 S. W. 855, 21 Ky. Law Rep. 4. The first two cases support the theory of the appellant as to absolute liability. The last case, intermediate as to time of decision between the first two, supports the appellees' theory as to the liability only for negligence. To these cases there should perhaps be added the cases of Sweeney v. Commonwealth, 118 Ky. 912, 82 S. W. 639, 26 Ky. Law Rep. 877, and Denny, Banking Commissioner v. Thompson, 236 Ky. 714, 33 S. W. (2d) 670, for the discussion of the principle as to the relationship between a public officer and the public funds in his possession. We shall not attempt to reconcile these cases, nor is it necessary in the instant case to choose between the two conflicting principles.''

The sheriff was held liable for the deposit he had made in that case, which was lost because of the failure of the bank in which it was made, but only because he had allowed and permitted it to remain with the depository after the date upon which he should have accounted for and paid it had elapsed, and upon which date the bank was solvent and a going concern, and would have accepted and paid any check that he might have drawn against the fund. The conclusion so reached on such facts was and is sound, since the sheriff's liability was put upon his negligent failure to settle and make payment on the day fixed by the law for that purpose, whereby he suffered and permitted the fund to get into such a condition as to render it unavailable and ineffectual for immediate payment, to say nothing of the

eventual possibility of its partial or complete loss. The facts of the instant case, it will be remembered, are the exact opposite to what they were in the Gannaway Case, since the closing of the depository in this case, whereby the funds became unavailable for the purposes of payment on the day fixed by law, occurred between the time the deposit was made and the next pay day upon which a settlement as well as payment by the sheriff was due.

An examination of the authorities and cases dealing with the general question of liability of the collecting officer will disclose that the conflicting opinions of the courts emanate from their adoption of one or the other of two conflicting theories, one of which is, that the collecting officer under the law is an insurer and guarantor of actual payment to the proper authorities of the public taxes and funds coming into his hands (and which we shall hereafter refer to as the "insurance rule"); while those courts and text-writers which deny such absolute liability require of the collecting officer only the exercise of ordinary prudence and business care in preserving the fund so collected by him until the arrival of the time for settlement and payment to the proper authorities. The latter view is adopted upon the theory that the officer is only a bailee of the funds that he collects, and incurs only the liability of such bailee, and which is the exercise of such care as we have already described. We shall hereafter refer to it as the "bailee rule."

Courts adopting the "insurance" rule at first did so many years ago when banking institutions had not become so numerous as to become the means whereby and through which practically all commercial transactions were made, and wherein idle cash was deposited by the owners thereof and subsequently drawn upon in the transaction of practically all of the business of the depositor. In such times the ordinary and everyday business transaction was executed by payments in cash, since there were no banks in reachable distance, nor had there been sufficient experience in dealing with them to inspire confidence, or to employ them in completing and performing practically all transactions in conducting commercial business in general. Since then, and in more recent years, the described conditions have undergone such a change as that it might be described as a

revolution in business methods. Not only does the employment of banks (as is now done) in the manner and for the purposes stated facilitate the transaction of business, but it likewise further secures the safety of the idle funds of their owners; in that they may intrust their possessions to an institution that is better equipped to preserve their safety than is the owner himself. Therefore it has come to pass that the individual handler of large sums of money, whether owned by him individually, or in some representative capacity, would now be regarded as extremely reckless if he undertook to preserve, protect, and care for it within his own office or dwelling, or in such other manner as he might employ instead of intrusting it with a bank which is organized and equipped for that special purpose.

In the very recent case of Denny v. Thompson, supra, we defined the relationship of a sheriff as custodian of taxes or other public fund collected by him to the fund itself in this language: "Without undertaking to answer the arguments or quote from authorities, we deem it sufficient for the purposes of this opinion to say that the collecting officer is regarded as a bailee or trustee for the state and municipalities," and the cases of Commonwealth v. Fisher, 113 Ky. 491, 68 S. W. 855, 24 Ky. Law Rep. 300; Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840; Johnson v. Fleming, 116 Ky. 680, 50 S. W. 855, 21 Ky. Law Rep. 4; and United States v. Thomas, 15 Wall. 337, 21 L. Ed. 89, were cited in support thereof. That being true, it would seem to inevitably follow, without additional reasons or arguments, that the "bailee" rule, supra, is the logical one to adopt and apply. It, with its corresponding liability, does not impair the protection afforded through the honesty and integrity of the collecting officer; for, if he should appropriate or otherwise lose the funds by any dishonest act, he could in no sense be said to have exercised ordinary care and prudence. Nor does it in any wise curtail or diminish his duty to be constantly watchful and to thoroughly investigate any fact coming to his knowledge, through any source, affecting the solvency of his depository and rendering it less safe for the protection and preservation of the deposited funds, since a failure in such respects could not be considered as the exercise of ordinary care as measured by the rule, supra, and as com-

monly understood to be requisite for the successful prosecution of any business enterprise.

After mature deliberation, and in view of the changed conditions referred to, and in the absence of any statute to the contrary, we have arrived at the conclusion that those courts adopting and approving the "bailee" rule are more in accord with what we think is the correct one under modern conditions than are the courts adopting and applying the "insurance" rule. Such conclusion not only harmonizes with the above-defined status and relationship sustained by the officer toward the collected fund (and which could not be true under the insurance rule), but it also affords equal protection to the public against dishonesty and graft, carelessness and imprudence, and other forms of selfishness and indifference, as is done under the "insurance" rule.

Up to this point we have not discussed the effect of the fiscal court's order designating the First National Bank of Barbourville as one of the depositories of the funds of the county. In the Stephens Case, supra (159 Ky. 729, 169 S. W. 473, 475), in discussing the question as to the effect of the selection and designation of the depository by the taxing authority, upon the liability of the collecting officer, we said: "When, however, the selection of the depository is taken out of his [official custodian] hands, and he is directed by the city to keep its funds in an institution selected by it, the city, and not the treasurer, assumes responsibility for the integrity and solvency of the institution so selected. Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737 [13 Ky. Law Rep. 572]." But that statement is subject to the qualification that, if the custodian of the funds has knowledge of such facts as would influence an ordinarily prudent and cautious man to take action, it would be his duty to do so, notwithstanding he was employing the designated depository as custodian of the fund pursuant to the order and designation of the taxing authority, since such failure to act on his part would amount to that degree of negligence rendering him liable as bailee for any loss that might occur. The conclusions herein expressed render it necessary that all cases from this court wherein the "insurance" rule was adopted should be, and they are hereby, expressly overruled.

Perhaps the majority if not all the cases adopting

and applying the "bailee" rule, and with which we hereby align ourselves, did so in a direct action against the sheriff and his sureties to recover the amount of defalcation, whereas this action 's not one for that purpose, since the rule is here invoked by plaintiff for the purpose of excusing him from making payment of the amounts found to be due at the time that the law required him to make settlement, and until which (if he is liable therefor) he could not obtain his quietus. But we can discover no logical distinction between exoneration from liability in a suit to recover the taxes from the bailee and one to excuse him from making payment at a particular time as a condition precedent to obtaining his quietus. Both are rested upon the same ground and will be sustained or rejected for the same reason.

Wherefore the judgment is affirmed; the whole court sitting.