## Board of Education of Jackson v. Hatton et al.

(Decided April 20, 1934.)

GRANNIS BACH for appellant.

O. H. POLLARD, H. L. SPENCER and L. S. BICKENSTAFF for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming in part and reversing in part.

The appellant began this as an action at law against Charles L. Hatton, and his surety, the Fidelity & Deposit Company of Maryland, to recover of them $4,-881.17, alleged to be due appellant for taxes collected by Hatton for it and not turned over to its treasurer; it recovered a judgment for $2,249.13 only, and it has appealed; and, Hatton having pleaded and attempted to prove he had overpaid appellant $1,379.08, has prosecuted a cross-appeal in which his surety has joined and is complaining of the rendition of any judgment against it. This cause was transferred to equity and heard before the chancellor.

Many questions presented in this record were presented and disposed of in Fidelity & Deposit Co. of Maryland v. Com., for Use, etc., decided January 23, 1934, see 252 Ky. 476, 67 S. W. (2d) 719, and will not be further noticed.

Jackson is a city of the fourth class, and it is stipulated that it was the duty of the tax collector of the city to collect the taxes due appellant (it is so provided by sec. 3587a-19 Ky. Stats.), and that the school tax bills due appellant for the years 1928, 1929, 1930, and 1931, were delivered to Hatton for collection.

### Taxes 1928.

Hatton made with Mr. E. P. Landrum, the representative of appellant, a settlement of the taxes for the year 1928 collected by him, and it shows he had turned over to the treasurer of appellant $12,850, and owed it a balance of $121.80. This settlement was filed with appellant on October 10, 1930, and was approved by it, and Hatton admits that it is correct.

## Taxes 1929.

Settlement of taxes for 1929, made by Hatton with Landrum, was reported to appellant on December 22, 1930, was approved by it, Hatton admits it is correct, and it shows payments made to treasurer and balance due as follows:

| | |
|---|---|
| $ 5,000.00 .......................... | Nov. 11th 1929 |
| 1,000.00 .......................... | Nov. 14th 1929 |
| 2,300.00 .......................... | Dec. 28th 1929 |
| 1,000.00 .......................... | Jany. 16th 1930 |
| 900.00 .......................... | June 10th 1930 |
| 1,500.00 .......................... | Oct. 16th 1930 |

$11,700.00

916.22 Balance due School Board.

## Taxes 1930.

Settlement of taxes for 1930 made by Hatton with Landrum was reported to appellant on August 14, 1931, and was approved, and it shows payments to treasurer and balance due as follows:

| | |
|---|---|
| $ 1,500.00 .......................... | Oct. 16th 1930 |
| 2,200.00 .......................... | Oct. 24th 1930 |
| 4,000.00 .......................... | Nov. 11th 1930 |
| 3,000.00 .......................... | Nov. 22nd 1930 |
| 800.00 .......................... | Dec. 23rd 1930 |
| 500.00 .......................... | Mar. 20th 1931 |
| 496.87 .......................... | Apr. 16th 1931 |
| 225.00 .......................... | May 22nd 1931 |
| 250.00 .......................... | July 7th 1931 |
| 550.00 .......................... | Aug. 11th 1931 |

$13,521.87 Total Payments

423.47 Balance due School Board.

From an examination of this settlement and the 1929 settlement, it will be seen Hatton was given credit for the same $1,500 payment in both of these settlements, and we have therefore stricken it from the 1930 settlement, which leaves the total payments made to the treasurer on that year, $12,021.87, and the correct statement of Hatton's account for 1930, after correcting this and an error of $2 made in addition, is this:

| | |
|---|---|
| Face value of the tax books .......................... | $12,368.61 |
| Taxes on corporate franchises ........................ | 3,714.69 |
| Payments made to treasurer ................. $12,021.87 | |

| | |
|---|---:|
| Property sold for taxes ..................... | 1,124.09 |
| Taxes on property released by the board ....... | 108.95 |
| Poll taxes released by the board ............. | 302.00 |
| Taxes released by the court ................... | 167.27 |
| Commissions on collections ................... | 287.65 |
| Amount paid for making out tax bills ......... | 35.00 |
| Amount paid for making settlement .......... | 15.00 |
| Salary as truant officer ..................... | 100.00 |
| Balance due schoo' board ................... | 1,921.47 |

$16,083.30    $16,083.30

Hatton testifies:

"There is $1,500.00 involved in the 1930 settlement that I should have credit for; there is a $2,000.00 receipt they do not give me any credit for."

We will have more to say about these later.

### Taxes 1931.

Hatton did not complete the collection of the taxes for the year 1931; neither did he and the board of education ever agree upon any settlement, so we have been required to make this one for them.

| | | |
|---|---:|---:|
| Face value of tax books ........................... | | $15,830.76 |
| Released by Court 80260 at 1½c .............. | $ 1,203.90 | |
| Face value of books returned ................ | 4,082.42 | |
| Released items included in face value of the tax books as returned ................... | | 762.30 |
| Oct. 7th, 1931, paid treasurer ................. | 525.00 | |
| Oct. 31st, 1931, paid treasurer ............... | 1,500.00 | |
| Nov. 10th, 1931, paid treasurer .............. | 2,500.00 | |
| Dec. 7th, 1931, paid treasurer ................ | 1,000.00 | |
| Jany. 2nd, 1931, paid treasurer ............... | 4,000.00 | |
| Salary as Truant Officer .................... | 100.00 | |
| Paid for making out tax books .............. | 35.00 | |
| Paid Grannis Back .......................... | 10.00 | |
| Commissions on Collections ................. | 153.56 | |
| Balance due School Board .................. | 1,483.18 | |

$16,593.06    $16,593.06

### Explanation of $1,203.90 Item.

The face value of the tax books for 1931 as they came to Hatton's hands was $15,830.76. Thirty-three people succeeded in getting the proper authorities to release their taxes in whole or in part, the aggregate amount of property released was $80,260, and the taxes

thereon at $1.50 per hundred amounts to $1,203.90, and for this Hatton is entitled to credit.

### Explanation of $762.30 Item.

After he was no longer collector, Hatton turned over his books to the attorneys for the city, and was given a receipt for the face value of the books so turned over, and thus is entitled to a further credit of $4,082.42.

The tax list of some people had been released either in whole or in part, which releases are included in the credit for $1,203.90, and some released sums were also included in the list aggregating $4,082.42 turned back to the city, and thus, where we can from the evidence ascertain that, a charge therefor must be made against Hatton, else he will get a double credit therefor, and we find the board of education is right in some of its contentions and in others it fails to establish that the releases were included in the receipt given for the tax books when returned. We are listing the items complained of making charge against Hatton where proof shows it is proper.

| | |
|---|---:|
| Margaret Hargis | $ 37.50 |
| Jackson Water Works | 448.00 |
| C. L. Bonta | .75 |
| W. D. Meadows | 7.05 |
| Adam Stacey | 227.00 |
| Ollie Hagins | 20.25 |
| Benton Howard | 12.75 |
| L. E. Smith | 9.00 |
| | $762.30 |

Appellant claimed a further charge of similar nature should be made against Hatton on account of releases made Amos Grigsby, South Strong, G. A. Clayton, Mrs. G. S. Collier, James Deaton, J. M. Roberts, Tom Allen, Lizzie Hagins, and Zurelda B. Collins, but we cannot from the evidence say the releases made these people were included in the receipt given Hatton, so we have not charged him with them.

### Summing Up.

Hatton made some payments on these balances, so that the account now stands as follows:

| | |
|---|---:|
| Balance due on 1928 | $ 121.80 |
| Balance due on 1929 | 916.22 |

| | | |
|---|---|---|
| Balance due on 1930 ........................... | | 1,921.47 |
| Balance due on 1931 ........................... | | 1,483.18 |
| Credits. | | |
| Dec. 23, 1930 on 1928 and 1929 ................. | $ 331.86 | |
| Sept. 17th, 1931 ............................... | 226.24 | |
| Oct. 7th, 1931 on 1930 ......................... | 400.00 | |
| Dec. 3rd, 1931 on 1928, 1929 and 1930 ........... | 13.99 | |
| Balance due ................................... | 3,470.58 | |
| | $4,442.67 | $4,442.67 |

### Further Credits Claimed by Hatton.

On May 9, 1932, the treasurer, Sewell, of the board of education, gave his deposition, and in it he filed a list of all the payments Mr. Hatton had made to him, they aggregate $47,068.96, and in the above settlements Mr. Hatton has been given credit for every one of them. Mr. Hatton gave his deposition on June 2d, almost a month thereafter, yet he said he had not examined the list filed by Mr. Sewell, nevertheless he testified it was incorrect, and claimed he was entitled to additional credits thereon. One is for $1,500, but it is clear from the evidence this is the $1,500 paid October 16, 1930, for which he was given credit on the taxes for the year 1929. He certainly fails in the evidence to establish that he made any payment of $1,500 other than the one of October 16, 1930. He also claimed a credit for a payment of $2,000 on the taxes for the year 1930, and wanted credit for that. He said he usually paid Mr. Sewell by check, and, when asked if he had a canceled check for this $2,000, he said he had not looked for it. He testified he had a receipt for this $2,000, but he did not file it. We are not convinced by the testimony of a man so utterly indifferent about a matter of such importance. Human nature is a part of every record, and, as we read them, we must ever keep in mind that we are dealing with the acts and conduct of human beings, and must not lose sight of the natural propensity of men to claim their own when we are weighing their testimony, and it would be a very unnatural thing for Mr. Hatton to pay appellant's treasurer these two items aggregating $3,500 when the payment of them would have overpaid what was due appellant on that year's taxes, $1,578.53. Not only would that be a strange thing for Mr. Hatton to do, but stranger still, after this settlement had been filed on August 14, 1931, was his conduct on October 7, 1931, in paying the appellant $400 more on the 1930 taxes. His

settlement had been filed, and, if his contention be true, he then knew he had overpaid appellant $1,578.53, so why pay $400 more? His claim of having made these two payments of $1,500 and $2,000 is utterly incredible. He claimed he had paid $55.28 to George Daniels and $7.67 for the Thomas Hargis estate, and had receipts for those payments. If he had, we can imagine no place those receipts would be of more service to him than right here and now, yet they are not filed; hence he cannot be allowed credit for them.

He claimed to have a canceled check for $226.74 which he had paid, and said he would file it, but he did not, and that cannot be allowed. We wonder if that is not the $226.24 for which he was given credit above. He claimed a credit for $276.74 paid A. H. Patton, but he did not file the receipt therefor as he promised he would, so that credit is denied him.

### The Bank Failure.

As he collected taxes, Hatton deposited the sums collected in the Hargis Bank & Trust Company to the credit of Charles L. Hatton, that bank closed its doors on February 6, 1930, and there was then $649.22 on its books to the credit of Charles L. Hatton, and he is asking credit for this, and his surety is most strenuously insisting such credit should be given because it had inserted in its bond this provision:

*"That the surety shall not be liable hereunder for the loss of any public moneys or funds occurring through or resulting from the failure of, or default in payment by, any banks or depositories in which any public moneys or funds have been deposited, or may be deposited by, or placed to the credit, or under the control of the principal, whether or not such banks or depositories were or may be selected or designated by the principal or by other persons."*

Appellant objects most strenuously to the allowance of this credit, first because this money was not deposited to the credit of "Charles L. Hatton, as tax collector of the Board of Education of the city of Jackson," but simply to the credit of "Charles L. Hatton," and he could and did check upon that account for his private needs; and, second, because the Hargis Bank & Trust Company had never been designated as a depository by the appellant or by any one authorized to act for it. It could not be expected of the tax collector that

whenever he collected a dime he should immediately run to the treasurer and say: "Here's a dime I have collected on the school taxes, give me credit for it." Neither can it be expected that there is no way for him to protect himself against the hazard of carrying the sums collected on his person until he has collected an appreciable sum.

The law is reasonable, and does not require absurdities. In this case it was provided by section 3587a-19, Ky. Stats.:

"Within ten days after the close of each calendar month the collecting officer of said city shall promptly pay over to the treasurer of the board of education all sums collected by him during the preceding month less his commissions."

On February 10, 1930, it would have been the duty of Hatton to pay over to the treasurer of appellant all money he had collected during the month of January, 1930. During January, and until the time of settlement came, Hatton would not be liable for the loss of this money if in the use of ordinary care he had selected a bank generally regarded as solvent and kept this money on deposit therein, or as expressed in Breckinridge County v. Gannaway, 243 Ky. 49, 47 S. W. (2d) 934, 935:

"The court, in submitting this case to the jury, in effect told them that the sheriff was not liable for the bank's failure to pay this check because of its insolvency if the sheriff exercised ordinary care in the selection and retention of this bank as a place of deposit for the tax funds."

That language was quoted with approval in Jordan, County Atty., v. Baker, County Judge, 252 Ky. 40, 66 S. W. (2d) 84. Both those cases hold that, until the day of settlement comes, the officer collecting public funds is a bailee, and, if he has acted prudently and used ordinary care to select a bank which he regarded as solvent as a depositary of the fund until that time, the officer is not an insurer and not obliged to account for the loss of the fund by the unforeseen closing of the bank so selected. The fact that the board of education had not selected this bank makes no difference; Hatton had done so, he had a right to do so, and there is not a line of evidence that in selecting it he had not used ordinary care. The Fidelity & Deposit Company must

remember the above language we have quoted from its bond is not all that bond contains, but in another part it undertakes *that the principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as aforesaid tax collector of the city of Jackson, and honestly account for all moneys coming into his hands as such officer, according to law.* If Hatton were paying over these collections at the time required by law, then the defendants were "safe" when this bank failed on February 6, 1930. If Hatton had not accounted and paid as the law required, then they were not "safe," and the defendants are liable for the loss of this money. It was the fact that settlement day had come and gone and he had not settled that imposed the loss on Gannaway in the Breckinridge County Case, supra, and it was the fact that the day of accounting had not come that saved Jackson in the Jordan case cited above. The officer who accounts and pays on time is safe; the one who holds overdue money does so at his peril. The law favors the diligent.

It is immaterial in what name this money was deposited so long as it was under the control of Charles L. Hatton, and the evidence shows it was under his control. Our difficulties are increased by the utter failure of this record to show when Hatton had collected the taxes that made up the $649.22 that was in this bank when it failed.

To be entitled to credit for this $649.22 upon the appellant's claim for taxes that Hatton admits he collected, the burden was on Hatton and his surety to show: (a) That Hatton had exercised ordinary care in the selection and retention of this bank as a depositary of these funds; (b) that this $649.22 was money Hatton had collected for and which belonged to the appellant; (c) that it was so deposited as to be under the control of no one other than Hatton; and (d) that it was not overdue as to the appellant, that is, in this case it was not money collected by him previous to January 1, 1930. To show it was deposited in January, 1930, is not enough; he must show it was collected in January, 1930. The proof fails as to requirement (d); therefore credit for this $649.22 cannot be allowed.

### Additional Claims of Appellant.

Appellant asks for $152 Hatton collected of Adam Stacey, but in the bills that made up the $15,830.76

charged to Hatton in the settlement of 1931 is a tax bill against Stacey for $227. The court released Stacey from tax on $5,000 worth of property, or $75, for which sum only did Hatton get credit in the item of $1,203.90 in the year 1931, and thus appellant has got its $152.

The appellant asked in its petition for a penalty of 10 per cent. on sums due from Hatton, but it has abandoned that position, and now asks a penalty of 6 per cent. The levy and collection of these school taxes is provided for and governed by section 3587a-19, Ky. Stats., in which it is provided:

> "Said board of education shall then cause the same to be collected by said city collector in the same manner and at the same time as taxes are collected for city purposes."

The statutory provision for collection of city taxes, in fourth-class cities, is found in section 3544a-1, Ky. Stats., and a reference to it will show that the council may by ordinance impose penalties calculated to expedite the collection of city taxes. There is nothing in this record to show the city of Jackson has ever enacted such ordinances. In view of the statutory provision for, and in the absence of, such an ordinance, there is no penalty that can be imposed on either the taxpayer or the tax collector.

Counsel for the board of education cites the case of Fidelity & Deposit Co. v. Com., 249 Ky. 170, 60 S. W. (2d) 345. That was a suit to surcharge a sheriff's settlement.

The statutes applicable to collection of taxes and accounting therefor by sheriffs were there before the court. Here we have the case of a tax collector in a fourth class city, his duties and liabilities are fixed by other statutes and ordinances enacted thereunder, he is not a sheriff, and our attention is called to no statute or ordinance imposing such a penalty upon him except it is urged that we should apply to him the penalties applied to the sheriff in the case cited, which we cannot do in the absence of some warrant of law authorizing the imposition of the same penalties upon collectors of school taxes in fourth class cities as that imposed on sheriffs; hence no penalties can be imposed in this case.

The judgment is affirmed on the cross appeal, and reversed upon the original appeal, the court will set aside its judgment for $2,249.13 in favor of the Board

of Education and in lieu thereof will award the board a judgment against both defendants for $3,470.58, with interest from the date its petition was filed.

The whole court sitting.