## Fulton County v. Thompson.
(Decided Oct. 9, 1936.)

E. J. STAHR for appellants.

WHEELER, WHEELER & SHELBOURNE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal presents the question of the liability of John M. Thompson, as sheriff of Fulton county, and his surety, the Maryland Casualty Company, for certain county taxes collected during the month of December, 1929, and deposited by him in the Hickman Bank & Trust

Company to the account of "John M. Thompson Tax Account."

The bank closed its doors on account of insolvency on December 30, 1929, and its affairs were turned over to the state banking commissioner for liquidation.

In the settlement made by the sheriff with the special commissioner appointed by the Fulton county fiscal court, the sheriff was found to have had on deposit in the bank when it failed something over $8,000 of the county's tax funds, which he had deposited during December, 1929, to his general tax account.

Pursuant to that settlement, he later paid thereon the dividends declared and paid him by the banking commissioner and other amounts, leaving, as the amount here in controversy, an unpaid balance of the county tax deposit of $5,668.34, which with other items of interest and penalties amount to some $8,853.64.

This suit was filed to recover of the sheriff and his surety that amount.

The petition set out the above facts in substance; the sheriff's execution and delivery to the county of official and revenue bonds for the year 1929, with the Maryland Casualty Company as surety therein, for the collection during such year of the county's tax funds; his deposit thereof during December, 1929, in the Hickman Bank & Trust Company; his failure to pay over the same according to law to the county treasurer on December 27, 1929, as was mandatorily required by the provisions of section 932, Kentucky Statutes; and the subsequent failure of the bank on December 30, 1929, while having on deposit the tax fund deposited with it.

The petition further alleged that the sheriff, having failed to make settlement with the county official entitled to receive the same on the said day required, thereafter ceased to be a bailee of the tax funds then in his hands, but became, by reason of his negligence in having failed to make due and proper payment thereof to the county at the time required, together with his surety, liable therefor as an insurer.

To this petition and petition as amended the court sustained demurrers, and plaintiffs declining to plead further, they have prosecuted this appeal, questioning the propriety of the court's judgment.

The court, it appears by brief, based its ruling in sustaining the demurrer to the petitions upon the authority of the late case of Jordan v. Baker, 252 Ky. 40, 66 S. W. (2d) 84, 87, 93 A. L. R. 813, wherein the court, in a very exhaustive and well-considered opinion, held that a sheriff depositing taxes collected in a duly designated depositary which failed between the time of deposit and time for sheriff's settlement with county authorities, being a bailee and required to exercise only ordinary care in preserving fund collected, was not liable for deposit where not negligent.

The court in this opinion refused to follow the rule declared by many courts of absolute liability of a public officer for public funds, referred to in the opinion as the "insurance rule," but recites that after a thorough examination of the authorities and cases dealing with the liability of the collection officer of public funds, it positively took its stand with those courts rejecting the theory of "absolute liability" and adopted the other of the two conflicting theories, which requires of the collecting officer only the exercise of ordinary prudence and business care in preserving the fund so collected by him *until the arrival of the time for settlement and payment to the proper authorities,* such view being adopted "upon the theory that the officer is only a bailee of the funds that he collects, and incurs only the liability of such bailee."

The opinion in the Jordan Case further refers to the cases of Sweeney v. Commonwealth, 118 Ky. 912, 82 S. W. 639, 26 Ky. Law Rep. 877, and Denny v. Thompson, 236 Ky. 714, 33 S. W. (2d) 670, in discussing the principle of the relationship between a public officer and the public funds in his possession.

As to the Denny Case, the opinion states that while the sheriff was there held liable for the deposit he had made, which was lost because of the failure of the bank in which it was made, it was so held *"only because he had allowed and permitted it to remain with the depository after the date upon which he should have accounted for and paid it had elapsed,* and upon which date the bank was solvent and a going concern, and would have accepted and paid any check that he might have drawn against the fund. The conclusion so reached on such facts was and is sound, *since the sheriff's liability was*

*put upon his negligent failure to settle and make payment on the day fixed by law for that purpose,* whereby he suffered and permitted the fund to get into such a condition as to render it unavailable and ineffectual for immediate payment, to say nothing of the eventual possibility of its partial or complete loss." (Italics ours.)

Further the court states that the facts presented in the Jordan Case before it were the exact opposite of what they were in the Gannaway Case (243 Ky. 49, 47 S. W. [2d] 934), "since the closing of the depository in this case, whereby the funds became unavailable for the purposes of payment on the day fixed by law, occurred *between the time the deposit was made and the next pay day upon which a settlement as well as payment by the sheriff was due."* (Italics ours.)

Section 932, Kentucky Statutes, provides that:

"It shall be the duty of the sheriff or other collecting officer of the county to pay to the county treasurer, on the first day of May, and every sixty days thereafter, all money in his hands collected by him for the county, taking a receipt therefor from the county treasurer for the amount so paid."

This section of the statutes was in full force and effect during the year 1929, and it is controlling in its mandatory requirement that the sheriff shall pay to the county treasurer, in the manner and at the times therein expressly designated, the tax funds collected and held by him.

It is admitted that there was on December 27, 1929, a duly appointed county treasurer of Fulton county, with whom the sheriff could and should have made the payment over in settlement of the county tax funds then in his hands, as required of him by the quoted section of the statutes.

In Breckinridge County v. Gannaway, 243 Ky. 49, 47 S. W. (2d) 934, 935, 936, the court in discussing the construction given this section, as mandatorily requiring the sheriff to make payment to the county treasurer of the tax funds in his hands as therein expressly designated, said:

"In Jefferson County v. Gray, 198 Ky. 600, 249 S. W. 771, this section was construed to mean that the

sheriff must turn over to the county all moneys in his hands collected for it on May 1st, and every sixty days thereafter, or on June 30, August 29, October 28, and so on. * * * Thus we see that, although under section 932 of the Statutes *the sheriff must pay over to the county treasurer the moneys he has collected for it as therein prescribed,* he may also be called upon at other times to pay over such funds." (Italics ours.)

Continuing, the opinion states that it was the mandatory duty of the sheriff, under the statutes there involved (sections 932 and 4147), to pay over the taxes collected by him to the officers and at the times therein prescribed, and further asks:

"What are the consequences if he failed to do so, even if it be conceded that prior to this time he was but a bailee of this sum and liable if lost due to the insolvency of the bank in which it was deposited only if he had been negligent in the selection and retention of such bank as such place of deposit? It will be noted that the sheriff did not retain this $34,267.58 in his own possession. He deposited it in the Bank of Hardinsburg & Trust Company and kept it there. In substance, instead of turning this money over to the county treasurer as he should have done, he turned it over to the bank as a deposit. Thus we have presented not a case of a bailee's duty to preserve the deposit, but rather its power of disposal. In the case of Harlan State Bank v. Banner Fork Coal Corp., 202 Ky. 639, 261 S. W. 16, speaking to this point, we said:

"'The bailee's duty to preserve the deposit for redelivery to the bailor is not absolute, and demands of him only due care and good faith, but he has no power to dispose of it except to the bailor or in accordance with his directions, and his duty to return the property to its owner is absolute and not dependent upon diligence or good faith, when considered separate and apart from the duty to keep for return as is the case here. 3 R. C. L. 104; 6 C. J. 1143.

"'While the bailee does not insure that he will safely keep and return the deposit, he does bind himself absolutely that he will not voluntarily dis-

pose of it except to the bailor or in accordance with his directions. * * *'

"So, in the instant case, conceding arguendo that the sheriff was a bailee of these collected taxes, we find that, instead of turning them over to the county treasurer as the statute required him to do, the sheriff left them in the custody of the bank. * * * He thereby assumed all the risk resultant from such departure from his duty as imposed by the statute. It follows that he and his surety are absolutely liable under the facts of this case, even though the appellees' theory of the sheriff's ordinary liability for public funds in his hands be adopted."

Compare, also, the case of Board of Education v. Hatton, 253 Ky. 828, 70 S. W. (2d) 923.

We are of the opinion that these cases and authorities cited clearly hold that, even though the rule of this court was definitely established in the Jordan Case, rejecting the theory of the absolute liability of the collecting officer for his payment thereof to the proper authorities and fixing his liability therefor only as that of a bailee, requiring him to exercise ordinary prudence and business care in preserving the funds collected until the arrival of the time for settlement and payment thereof as required by the statutes, the different rule of liability announced in the Gannaway Case, supra, and expressly approved in the Jordan Case, applied where the collecting officer has permitted the collected tax funds to remain in his hands after the due date of payment to the proper officer, as set forth in the statute, making him an insurer of the tax fund collected and unpaid.

We have no doubt that the rule as thus announced in the Gannaway Case, supra, is here applicable and controlling of the liability of the defendant sheriff and his surety, and that by reason of the sheriff's failure to pay over the county's funds collected, and in his hands on December 27, 1929 (the day he was mandatorily required, under the provisions of section 932, to pay over to the county treasurer the tax funds collected by him and on which day his chosen depositary bank was solvent), he became absolutely liable as an insurer for his proper accounting and payment over of them thereafter, and the bank in which same were deposited having

failed, he and his surety must be held liable therefor, with interest and penalties.

However, it appears that the interest on the tax fund found owing by the sheriff on December 27, 1929, was here erroneously computed, as if due and payable from the tenth of each succeeding month thereafter. This computation was erroneously based upon the requirements of a section of a statute not here applicable, and should be corrected so as to conform with the provisions of section 932 of the Statutes here controlling, which names May 1 and sixty-day periods thereafter as the dates upon which the said county tax funds are due and to be paid over to the county treasurer.

Therefore, for the reasons above stated, we are of the opinion that the learned trial judge erred in sustaining the demurrers to appellant's petition; for which reason his judgment in so doing must be reversed, and the case remanded for further proceedings consistent with this opinion.