**In re BELKNAP, INC., Debtor.**

**OFFICIAL UNSECURED CREDITORS' COMMITTEE OF BELKNAP, INC., ex rel. BELKNAP, INC., Plaintiff,**

**v.**

**The SHALER COMPANY, Defendant.**

**Bankruptcy No. 3–85–03059.**

**Adv. No. 3–87–0204(4).**

United States Bankruptcy Court,
W.D. Kentucky.

Oct. 29, 1988.

Jeremiah A. Lloyd and Gerald F. McDaniel, Louisville, Ky., Ronald R. Peterson and Jay S. Geller, Chicago, Ill., for plaintiff.

Helen Lucier, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This Chapter 11 adversary proceeding is before the court on the plaintiff's motion for partial summary judgment and upon the defendant's motion for summary judgment pursuant to Fed.R.Civ.Pro. 56 and Fed.R.Bankr.Pro. 7056. The parties have filed, and we have reviewed, well-researched memoranda in support of their respective positions. For the reasons set forth below, we will sustain the plaintiff's motion as to the applicable date of transfer pursuant to the provisions of 11 U.S.C. § 547(b)(4)(A).

Motions for summary judgment are properly sustained only where there exist no genuine issues of material fact, thereby entitling a party to judgment as a matter of law. The burden of establishing the absence of factual dispute rests with the moving party. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This preference litigation was filed on September 29, 1987 pursuant to the provisions of the debtor's confirmed joint plan of liquidation, which authorized the unsecured creditors' committee, *inter alia,* to pursue such causes of action. At issue are three checks, written by the debtor to the defendant in August and September, 1985 totalling $4779.22, the proceeds of which the plaintiff seeks to recover as preferential under the provisions of 11 U.S.C. §§ 547 and 550(a).

A brief summary of the facts giving rise to the instant motions follows. The debtor filed its Chapter 11 petition on December 4, 1985. The provisions of 11 U.S.C. § 547(b)(4) allow the trustee (here, the duly-authorized creditors' committee) to potentially avoid transfers made by the debtor to a non-insider which occur, "... on or within 90 days before the date of the filing of the petition ..." In accordance with the time computation method set forth in Fed. R.Bankr.Pro. 9006, the 90th day prior to this debtor's petition falls on September 5, 1985. The checks here in issue were written by the debtor prior to the commencement of the preference period. They were, however, honored by the debtor's bank within that period, as follows.

| Check number | Date written | Date paid by bank | Amount |
|---|---|---|---|
| 034525 | 8/15/85 | 9/11/85 | $1582.31 |
| 036749 | 8/29/85 | 9/5/85 | $1614.60 |
| 036983 | 9/3/85 | 9/16/85 | $1582.31 |

Accordingly, the narrow legal issue we now consider is the date upon which the actual transfer of money from the debtor to the defendant took place. There is no factual dispute between the parties as to the applicable 90 day preference period, nor is there any dispute as to the dates set forth above. We find the issue to be purely legal in nature and therefore ripe for decision.

Analysis of the instant fact pattern must begin with the applicable section of the bankruptcy code, 11 U.S.C. § 547(b), which provides,

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

It is the position of the defendant that the transfers here in issue occurred when the debtor delivered the check to it. Predictably, it is the plaintiff's theory that the transfer occurred at the time the debtor's bank honored the check. We will address the various legal views advanced by the parties, *seriatim.*

■ Before we begin our analysis, we believe it imperative to point out that section 547 is one of the most difficult in the bankruptcy code. We wholeheartedly agree with the defendant's characterization of decisional law construing the preference section as, "utterly confusing and complex." It appears to this court that this confusion is due in part to a failure to make crucial distinctions between the various subsections of section 547, when construing legislative histories and decisional law on the subject. It is a fallacy to assume that the same policy considerations which resulted in Congressional enactment of one particular subsection of 547 are also present in a different subsection. For an excellent discussion of this point, see Note, *Timing of Payments by Check Under Section 547 of the Bankruptcy Code,* 7 Cardo-

zo L.Rev. 887 (1986), at 902. Therefore interpretation of section 547 must proceed with particular attention being given to the precise subsection in issue; care must be taken to avoid applying the rationale of one subsection to the provisions of another.

The foregoing principles are especially crucial when construing subsections (b) and (c). Section 547(b) establishes the prima facie case of avoidability. The burden of proof thereunder falls upon the plaintiff. The exceptions to preference avoidability are set forth in section 547(c) and the burden of establishing them is cast upon the defendant. 11 U.S.C. § 547(g). Thus we believe that in deciding whether a transfer constitutes an avoidable preference, there must be a deliberate, step-by-step approach, wherein the elements of 547(b) are established first. Once those elements are proven, the transfer must then be further tested against the exceptions enumerated in section 547(c). Any deviation from this process will necessarily result in confused and frequently unintelligible analysis.

■ At this juncture we are concerned only with the threshold question of whether the plaintiff has made out its prima facie case with regard to section 547(b)(4), i.e., whether the transfers here in issue were made on or within 90 days of the date of the debtor's chapter 11 petition. We do not reach the applicability of any exceptions the defendant may subsequently seek to assert under section 547(c). Accordingly we confine our analysis to section 547(b)(4).

The parties are in apparent agreement with the principle of law announced in *McKenzie v. Irvin Trust Co.*, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945) wherein it was held that, in the absence of a controlling federal statute, reference must be made to state law. 11 U.S.C. § 101(50) defines "transfer" as,

"... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

Although this provision very broadly delineates what a transfer consists of, we discern nothing therein which purports to define when a transfer occurs. The parties agree that 11 U.S.C. § 547(e) is inapplicable to these facts. We find, therefore, that the bankruptcy code is silent as to the issue now before the court; accordingly we must look to state law to determine when, under section 547(b), a transfer is effected by check.

The parties are also in agreement that the majority of reported opinions deciding this issue have held that the transfer occurs when the debtor's check is honored by the bank. For a compilation of many of these cases, see Note, *Timing of Payments by Check Under Section 547 of the Bankruptcy Code*, 7 Cardozo L.Rev. 887, at 895, fn. 45 (1986). The leading case in accord with this view is *In re Sportsco, Inc.*, 12 B.R. 34 (Bankr.D.Ariz.1981). In that case the court reviewed Arizona's enactment of Article 3 of the Uniform Commercial Code, with is in all respects identical to Kentucky's enactment thereof, K.R.S. 355.3–409(1). It provides,

"A check or other draft does not itself operate as an assignment of any funds in the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

K.R.S. 355.3–410(1) defines "acceptance" as, "... the drawee's signed engagement to honor the draft presented." The significance of this language is that an assignment would imply a fundamental change in the party to whom the bank is indebted. Normally a bank is indebted to its drawer. An assignment would realign this relation, causing the drawee bank to be indebted to the holder of the check. Clearly such a relationship is in fundamental conflict with the other provisions of Article 3. The owner of the account does not finally relinquish control of the funds held therein until the bank has accepted the drawer's check for payment. Prior thereto, the drawer can exercise its right to stop payment, effectively preventing the funds from ever reaching the holder. Accordingly, we interpret Kentucky law to mean that delivery of a check to the payee thereon vests no

title to funds in the payee until the bank honors the check. Accordingly, for purposes of ascertaining when a transfer occurs under the provisions of section 547(b), we hold that it occurs when the bank accepts the check.

We note also that Kentucky decisional law prior to the enactment of the Uniform Commercial Code is in accord with our view. In *Breckinridge County v. Gannaway*, 243 Ky. 49, 47 S.W.2d 934 (1932), the Kentucky Court of Appeals (now Supreme Court) held that delivery of a check does not operate as payment until paid or accepted by the drawee.

We readily acknowledge that there are several cases, most notably from the Ninth Circuit, which hold that, where payment is made by check, transfer occurs upon delivery of the check, provided that it is presented to the bank for payment within a reasonable time thereafter. See, e.g. *In re Kenitra*, 797 F.2d 790 (9th Cir.1986) and *Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982). However, we believe that the analysis in those cases fails to distinguish between the elements of a preference as detailed in section 547(b) and the exceptions thereto outlined in section 547(c).

The defendant cites the legislative history to section 547 wherein the comment is made that, "... payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2)." 124 Cong.Rec. H 111097 (Sept. 28, 1978); S 17414 (Oct. 6, 1978). We note, as did the court in *In re Arnett*, 731 F.2d 358 (6th Cir.1984) that section 547(c)(1) was intended by Congress to deal with the common situation where a cash transaction in intended by the parties but where payment is made by check. Congress recognized that this scenario creates a credit transaction, although the commercial reality is that no such credit transaction is intended. Thus the contemporaneous exchange exception of 547(c)(1) alluded to by the defendant and the language quoted above is a not a Congressional attempt to

decide when a transfer occurs where payment is made by check; it is a recognition of the fact that, in such "cash" transactions, the questioned transfer is not being made on account of an antecedent debt. Thus we do not find the legislative history of section 547(c)(1) persuasive in the context of section 547(b)(4).

As we have observed earlier, our holding today is not dispositive of this case. We have not yet reached the point of deciding the applicability of the exceptions which the defendant may develop. Accordingly, we will enter partial summary judgment in the plaintiff's favor as to the applicable date of transfer under 11 U.S.C. § 547(b)(4) and will schedule the matter for further proceedings.

An order consistent with this opinion will be entered this day.

This memorandum opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.Pro. 7052.